## Cleaver *versus* Bullock.

If one contracts to furnish mill machinery to another, to be paid for in full, " when the machinery has been run thirty days and proves satisfactory," and after a trial of four or five days the machinery proves to be wasteful of grain, and inadequate to do the work for which it was sold, the purchaser need not allow further trial at a loss of time and a waste of grain to himself. The contractor cannot recover, if the purchaser rescinds the contract, for this reason, and returns the machinery.

January 7th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term, 1885, No. 71.

This was an action of assumpsit, brought 29th November, 1882, to recover a balance alleged to be due plaintiff under a written contract for the erection of certain machinery in defendant's mill. The pleas were non assumpsit, set-off, payment with leave, etc. After the case was at issue it was by agreement referred to E. Hunn Hanson, Esq., as referee, under the provisions of the Act of 14th May, 1874: P. L., 166. The referee proceeded to hear the case, and on July 17th, 1884, he reported *inter alia* as follows:

The action was brought to recover part of the consideration moneys of a written contract dated July 6th, 1882, and to recover under a parol addition to it. The contract is in the following words:

*Philadelphia, Pa.,* July 6th, 1882.

MEMORANDUM OF AGREEMENT made this day between Charles K. Bullock and S. and J. Cleaver.

The said Charles K. Bullock agrees to furnish the said S. & J. Cleaver the following machinery: One Hendrickson's three-roll gradual reduction mill, one six-fourteen (14) F 8 bolting chest clothed, one smooth-roll, one bran-roll, one Silver Creek flour-packer, with $\frac{1}{4}$, $\frac{1}{8}$ and barrel tubes; two Hendrickson's No. 2 middlings purifiers, with all shaftings, pulleys, belting, mill-wrighting, etc., to put in operation the above machinery and make a gradual reduction mill, for the sum of two thousand seven hundred and fifty dollars ($2,750). Said money to be paid by the said S. & J. Cleaver to said C. K. Bullock, as follows: $1,000 when the machinery arrives at the mill of said S. & J. Cleaver; $1,000 when the machinery is ready to start; and balance, $750, when machinery has been run thirty days and proves satisfactory. The said Messrs. S. & J. Cleaver are to board the millwrights while at work at their mill, and make no charge for said board to C. K. Bullock.

All the old material, such as pulleys, shafting, belting, etc., that can be utilized in remodeling the mill is to be used by said C. K. Bullock. The above machinery is to be put in said mill of S. & J. Cleaver under the personal supervision of Mr. Justice J. Hendrickson.            CHAS. K. BULLOCK,
                              S. & J. CLEAVER.

Indorsed upon the contract is the following:
If the two Hendrickson's middlings purifiers do not give satisfaction they are to be exchanged for other makes, to be selected by S. & J. Cleaver, they paying the difference in price, likewise the breaks.            CHAS. K. BULLOCK,
                              S. & J. CLEAVER.

The *narr* alleged performance by plaintiff and non-performance by defendants; also, that the plaintiff was ready and willing to perform, but was prevented by the defendants; and likewise that when the contract was made it was agreed by the parties to it that the plaintiff's work and machinery was to be a model of a new milling process, and if it proved to be successful the plaintiff could carry into effect contracts that he had made with various millers to introduce into their mills similar machinery, whereby he would make large profits; that these contracts were known to the defendants, who prevented his performance of the work in their mill, and thereby kept him from the contracts with respect to other mills. The *narr* contained the common counts, and the bill of particulars claimed ($3,617.07, less $2,263.80), $1,853.27.

The defendants pleaded the general issue, together with payment and set-off, under which they gave notice that they would claim an indebtedness of the plaintiff to them of $7,500 by reason of the unfitness of the machinery supplied, the necessity of its removal, and their inability to use the mill during such removal.

On the            day of            Silas Cleaver died; his death was suggested of record, and the action was continued against the surviving partner.

The following are the facts established by the evidence found by the referee, and which are all those relevant to the issue:

I. The contract (a copy of which is hereinbefore set forth), dated July 6th, 1882, and the indorsement thereon was duly executed by the parties to it,—by the plaintiff who was then a maker of mill machinery, and the defendants who were then millers.

At the time of the execution it was understood by both parties as the result of their conversations then and previously had, that the refitting of the defendant's flour mill under the

[Cleaver v. Bullock.]

contract was somewhat of an experiment so far as the intro-
duction in it of the Hendrickson gradual reduction rolls, of
which the plaintiff was the builder, which had never been in
use in a mill; and in view of this and his belief that if they
were successfully worked other millers would desire their
mills similarly refitted, he stipulated that when the defend-
ant's mill as refitted should be in successful operation it
might be exhibited to other millers, and to this the defendant
assented.

II. Pursuant to the contract the plaintiff furnished the
defendant the machinery therein designated, and placed it in
position in their mill under the superintendence of Justice J.
Hendrickson, who was the inventor of the rolls in the con-
tract mentioned. That part of the machinery called the Hen-
drickson bran roll was unsatisfactory to the defendants, who
selected a Dawson roll in place of it. The plaintiff accord-
ingly removed the former and substituted the latter, which
cost the plaintiff $175 more than the Hendrickson bran roll.

III. On 21st October, 1882, the mill thus refitted and with
the Dawson roll, was set running under the management of
Hendrickson, who was a millwright, and in conjunction with
the defendant's chief miller, who was unacquainted with the
system of which the new machinery was part. The mill was
run for several hours daily for four or five days, changes being
made in the adjustment of parts of the machinery. The ma-
chinery had wholly failed to do that for which it was designed,
in this respect, that very much less flour and very much more
bran was produced by it than by the old machinery it had
superseded. On the 25th or 26th of October, Hendrickson
admitted he could do no more, and proposed to the defendant
miller that one Morgan, said by him to be experienced and
familiar with the system for which the machinery then in the
mill was intended, should be sent for to work it. The defend-
ant's miller objected on the ground that he had actual knowl-
edge of the incompetency of Morgan. On the following day
John Cleaver asked Hendrickson what should be done; the
latter proposed they should call upon Bullock.

IV. Accordingly, on the 31st October, 1882, John Cleaver
called upon C. K. Bullock at his office. Bullock then insisted
that the machinery had not been tested, and asked that Cleaver
should allow him thirty days for this purpose, saying that it
could not be properly tested in less time. He also stated that
period was allowed him by the contract of July 6th. Cleaver
declined to allow any further trial of more than a day and the
use of 100 bushels of wheat. Bullock refused to accept such
trial on the ground that a day would be wholly insufficient,
and but one thirtieth of what would be requisite. Subse-

quently to this interview no trial of the machinery was made, and neither Bullock nor Hendrickson, on his behalf, had, after 31st October, any control over the mill and its machinery.

V. On 8th November, 1882, Bullock notified Cleaver that they had departed from the contract with him ; that they had not allowed him a fair trial with the machinery, and he called upon them to pay the third instalment under the contract.

On the 13th November, 1882, Cleaver notified Bullock to take out the breaks and purifiers from their mill by 15th November, as the new machinery to replace them was on the way, and on the 21st November, 1882, they notified Bullock they had shipped the rolls, purifiers and attachments to him. He declined to receive and did not intermeddle with them, and on the 29th day of November, 1882, he brought this suit. The Hendrickson breaks were not, after their removal from the defendant's mill, used in any other.

VI. In refitting a mill with the gradual reduction and new machinery, before it will do the work for which it is designed it is usually, and almost always, requisite to make and unmake various changes and adjustments of parts of the combined mechanism to the other portions to which they are related, and to operate the mill for a time after each change to find if its working is that which is sought; that these changes and trials may and usually do take weeks to make, and at times a month, although it may happen that no changes whatever are needed.

The greater or less production of bran may be entirely caused by the angle at which the rolls are set one to another, and they may be so set that half the grain may be wasted without any fault in the machinery itself.

VII. The defendant has paid the plaintiff $2,000, that being the first and second instalment under the contract, and he has advanced moneys for his use, amounting to $294.42.

The plaintiff has done work and labor for the defendant amounting to $266.57 beyond refitting their mill under the contract.

There was no evidence on behalf of the plaintiff to maintain the averment of the *narr* that he had made contracts with other millers than the defendants to introduce into their mills machinery for the gradual reduction system, and none to maintain the indebtedness of $7,500 which the defendants' notice alleged was due from the plaintiff. The simple matter for determination is relative to the defendants' liability to the plaintiff for the $750, the third instalment under the contract.

Conclusions of the referee from the foregoing statements of fact, and his interpretation of the clause of the agreement with respect to the third instalment:

This clause is as follows: Of the $2,750 consideration money, $1,000 (is to be paid) when the machinery arrives at "the mill of said S. & J. Cleaver. $1,000 when the machinery is ready to start, and balance, $750, when machinery has been run thirty days and proves satisfactory."

Bearing in mind that the Hendrickson three-roll gradual reduction machine had never been in use; and that before the new machinery would produce its expected results, trial and adjustment were necessary, the interpretation of the above clause presents little or no difficulty. It is that S. & J. Cleaver should not be obliged to pay $750, until the machinery had been run at least thirty days, and had been so run that they were satisfied, or ought in right reason to be satisfied with it. And also that in order to produce such satisfactory operation, C. K. Bullock should have a reasonable time to adjust and try its working.

From the facts found it is obvious that what took place at the interview of October 31st, 1882, is of the first importance in coming to a legal conclusion in respect to the issue. This is not affected by what took place between Hendrickson and the defendants' miller with regard to the offer of the former to have Morgan operate the machinery. The objection made to the offer was a reasonable one, and both the suggestion and objection were before the interview between the parties to the contract and which took place partly in consequence of this.

At this interview Bullock insisted that Hendrickson's trial had been insufficient to test the machinery, and he demanded of Cleaver a further time for this purpose, saying that a proper trial could not be made in less than thirty days, and that the contract gave him so much for the purpose. To this demand, Cleaver offered a further trial of one day (with the requisite wheat) and no more. Bullock refused to accept because it was but one thirtieth of what he said was necessary.

Under the interpretation given to the contract, Bullock was entitled to a reasonable time within which to try by change and adjustment to bring the machinery into working condition. The contract did not fix either thirty days or any time for this, and in asserting that it gave him thirty days, Bullock was in error.

There was nothing in the evidence produced to induce the belief that the offer of one day was made in consequence of the demand for the number which Bullock asserted he was entitled to have under the contract. The offer is not a natural consequence of such assertion, and it should not be presumed, therefore, to have been made in consequence of it. Bullock's error was consequently an unimportant one, and the gist of the matter to be resolved is whether Bullock was or was not

entitled to time for a further trial in addition to that which had been made. This depends in a measure upon the cause of the failure of the machinery. If it resulted from unfit or defective mechanism or plan, no trial beyond that had was needed. If, however, it resulted from the want of proper arrangement and adjustment of serviceable and fit machinery, a further trial might and probably would disclose the course that should be taken to bring the machinery into working order.

On behalf of the defendants it was urged that if Hendrickson, the inventor of the machinery, could produce no other results than those he had exhibited, there was no need for further trial and the evidence of defective plan or mechanism was complete. If no evidence had been produced, this contention might well stand. Testimony was brought forward, however, from which the fact has been found that the failure before described might be entirely caused through unskilful ·or faulty setting of the bran rolls, and without fault of the mechanism itself. The mere fact, therefore, that the inventor of the machine had failed to make it work, together with the further fact that the Hendrickson breaks were never subsequently used in mills is, in view of the finding last stated, insufficient to warrant the belief that no further trial would have shown results different from those shown by the inventor, and the fact that the results of his trial might be produced without fault of the machinery, justifies the conclusion that a further trial might reveal through different adjustments a correct working of it. Bullock was therefore entitled to further trial, and the remaining question is, was one day a sufficient time where the defects are those that can be remedied by changes and adjustments. The facts found show that a much longer time is generally necessary, and the one day offered was not, therefore, a reasonable time, and the refusal was a violation of the plaintiff's right under the contract; it prevented, and the defendants' subsequent removal of the machinery from the mill, made impossible any effort of the plaintiff to bring the machinery into a satisfactory working condition.

The consideration of the agreement of July 6th, 1882, does not admit of apportionment on either side; the contract is for the payment of an ascertained and stated sum for a certain and definite work, it is therefore an entire contract. A party to such a contract may recover its consideration money if he shall prove that having performed all but a part of his obligation under it, he has been ready to perform and has offered to perform that part but this has been prevented by the other party: Albert *v.* Frick, 1 Pennypacker, 139.

[Cleaver v. Bullock.]

Bullock supplied to and placed in Cleaver s mill, the machinery mentioned in the contract, offered, and by such offer exhibited a readiness to perform the rest of his duty under the contract, by bringing into proper and satisfactory operation the mill machinery. This he was prevented by the defendants from doing, and he is consequently entitled in this suit to recover the balance of the consideration money, $750—as though he had done what he was prevented from attempting —with interest from 31st October, 1882, the date on which he was so prevented.

There was no dispute with respect to the following sums, and the plaintiff was admitted to be entitled to recover $175, the price paid by him for the Dawson roll beyond the cost of the Hendrickson roll which it superseded, with interest from the time it was bought, 23d October, 1882.

That the plaintiff was also entitled to recover $266.57 for work and labor done by him for the defendant, beyond that stipulated in the contract, with interest from 31st October, 1882.

The following due the plaintiff from the defendant is based upon the foregoing:

| | | |
|---|---:|---:|
| 1. Balance due under contract | $750 00 | |
| With interest from 31st October, 1882, to 17th July, 1884, date of filing the referee's report | 82 90 | |
| | | $832 90 |
| 2. Additional cost of the Dawson bran. roll over that of Hendrickson | $175 00 | |
| Interest from time of purchase 23d October, 1882, to 17th July, 1884 | 18 16 | |
| | | $193 16 |
| 3. Work and labor beyond that stipulated by contract | $266 57 | |
| Interest from 31st October, 1882, to 17th July, 1884 | 27 34 | |
| | | $293 91 |
| | | $1,319 97 |

There was, likewise, no dispute with regard to a sum due 31st October, 1882, from the plaintiff to the defendants, chiefly for moneys advanced on his account amounting to . . . . . $294 52

Interest from 31st October, 1881, to 17th July, 1884, 30 21

$324 73

[Cleaver *v.* Bullock.]

Froni the above sum of. $1,319.97 due the plaintiff, there is to be deducted $324.73 due by him to the defendant, leaving due $995.24.

The matter submitted having been determined through the. finding and conclusions stated, and upon· the calculations following thereon as above set forth, the decision of the referee is, that Charles K. Bullock do recover of John Cleaver, surviving partner of the late firm of S. & J. Cleaver, the sum of. $995.24.

No points of law in writing were submitted.

Exceptions were filed to the report of the Referee by the defendant. After argument upon consideration the Referee. overruled the exceptions, judgment having been entered upon. the report of the Referee the defendant took this writ and filed the following assignments of error:

1. The Referee erred in deciding that by the contract of July 6, 1882, C. K. Bullock had the right to make trial of the machinery at the defendant's expense and with the defendant's wheat.

2. The Referee erred in not deciding that under the contract of July 6, 1882, defendant alone had the right to make trial of the machinery by running the mill.

3. The Referee erred in deciding that after the mill had been run for four or five days at considerable loss and expense and the machinery had wholly failed to perform its work and the inventor had confessed his inability to understand or remedy the defects, the defendant was in fault in limiting an offer to plaintiff to allow him to make a fresh trial of one day and with one hundred bushels of wheat.

4. The Referee erred in not reporting that the complete failure of the machinery. after its trial by the inventor, the demand of the plaintiff for a thirty days' trial to which (as the Referee finds) he was not entitled, and his failure either to offer a shorter trial or. to accept defendant's offer of a trial for. one day with one hundred bushels of wheat justified defendant in rejecting the machinery and declining to pay for it.

6. The Referee erred in not reporting that under the contract of July 6, 1882, defendant's only duty was to make a reasonable trial of the machinery, and that the facts as found by the Referee showed that this had been done.

7. The Referee erred in reporting that upon the facts found and reported by him, plaintiff was entitled to recover.

8. The Referee erred in not sustaining the defendant's eighth exception to his report which was as follows:

9. "Because the referee did not report that upon the facts found by him the judgment should be for the defendant."

*Frank A. Prichard* and *John G. Johnson*, for plaintiff in error.

*Lewin W. Barringer*, for defendant in error.

Mr. Justice TURNKEY delivered the opinion of the court, February 26th, 1886.

Bullock contracted to furnish Cleaver certain machinery for a mill and put the same in operation, the price to be paid in three instalments, the last "when machinery has been run thirty days and proves satisfactory." They stipulated that the machinery should be put in under the personal supervision of Mr. Justice J. Hendrickson who was the inventor of Hendrickson's three-roll gradual reduction mill. The machinery was put in the mill under Hendrickson's supervision, and the first two instalments of the price were paid. When completed, October 21st, 1882, the mill was set running under the management of said Hendrickson and Cleaver's miller, was tried four or five days, and " during that time between one hundred and one hundred and fifty bushels of wheat were used, and fifty per centum of this was lost or wasted on account of the failure of the machinery to perform its work." "The wheat wasted in the trial given of the machinery, was more than the usual total loss on the trial of a new mill." " The principal loss was not in the quality of the flour but in the production of too much bran, a defect which could only be remedied, if at all, by the adjustment of the break-roll alone and not by the numerous changes and adjustments in the whole machinery, sometimes necessary to bring the mill up to its full capacity of high grade flour."

After said trial Hendrickson admitted he could do no more. Bullock demanded thirty days for testing the machinery, said it could not be properly tested in less time, and alleged that period was allowed him by the contract. Cleaver refused his demand and offered to allow a trial of one day and the use of one hundred bushels of wheat, which was rejected " on the ground that a day would be wholly insufficient, and but one thirtieth of wheat would be requisite." Just there offers to put the machinery in working condition ended. Soon after Bullock declined to take out the machinery, and Cleaver took it out and shipped it to him.

Some other facts were found by the Referee proper to be considered for a right understanding of the contract and Acts of the parties, but none which changes the terms of the written agreement. Although Cleaver had thirty days after the machinery was ready to start, to ascertain if it would work satisfactorily, good faith required that Bullock should have reasonable time and opportunity to make proper tests and

remedy defects, if any; and a refusal of such opportunity would be strong evidence that Cleaver believed the contract had been substantially performed.

The inventor of Hendrickson's three-roll gradual reduction mill was to supervise the work, and he did. In the trial he made, more wheat was wasted than the usual loss on the new mill. For five days after the inventor had pronounced the mill ready to use, he was endeavoring to discover and remedy its faults, and failing, he quit. Then the plaintiff insisted that not less than thirty days more were requisite, notwithstanding the fact that the principal loss was in the production of too much bran which defect could only be remedied, if at all, by adjustment of the break-roll alone, and not by numerous changes and adjustments in the whole machinery. He refused to take a day for testing and trial. Had the plaintiff believed the mill was not worthless and was offering in good faith to discover and remedy defects he could have taken the day and in that time probably have found the defect, if not applied the remedy. There was no reason why the defendant should submit to further loss of time and waste of wheat.

This case is unlike Albert & Co. *v.* Frick & Co., 1 Pennypacker, 132. Frick sold to Albert an engine and boiler warranted to be of best work and material and to perform satisfactorily. Albert received the machinery, retained and used it, and the jury found that Frick substantially performed the contract; but there were some slight defects. The court charged that if a party contracts to do work or to furnish machinery or other things to another and performs substantially, but fails in some slight particulars, the other party who receives the benefit and enjoys the fruits of such performance is liable for the price, deducting what loss or damage he may have sustained by the deviations from the contract. That instruction accords with the well settled rule. And it was remarked, " If the defendants ascertained that the engine was not what was contracted for, they might have rescinded the contract, they might have refused to keep the engine on the ground that it was not according to warranty, and then they might look to the plaintiff for the damages for not furnishing one according to the contract."

Here the defendant within proper time notified the plaintiff to take away the machinery, and on his neglect or refusal to take it promptly, sent it to him. The fact is not in the case that Hendrickson's three-roll gradual reduction mill could have been made to work successfully, but instead, it had never been tried before nor was it used afterwards. We think it clear that upon the facts found by the Referee the plaintiff is not entitled to recover the unpaid instalment.

[Schaeffer v. Fowler.]

The Referee found that the plaintiff did work and labor for the defendant beyond refitting the mill under the contract, to value of $267.57, and that he was entitled to $175 because of the purchase of the Dawson roll. Also that the defendant advanced moneys for the plaintiff amounting to $294.24. There is no dispute respecting these items.

> Judgment reversed, and judgment is now entered for the plaintiff, Charles K. Bullock, for $162.34 with interest from July 17th, 1884.

[NOTE.—The object of a " break " machine, in the " gradual reduction " system of milling, is to give the wheat-berry its first " cracking or breaking " after the berry leaves the cleaning machinery. The " stuff " or " feed " is then taken through " spouts " and " conveyers " to the " bolts " where the " separations " are made and then returned sometimes again to the " break-rolls," to be re-cracked, or carried to other parts of the mill, such as " bran-rolls " ; then to the " purifiers," where the solid and hard inner part of the berry is separated from other parts of the berry, making what are called " middlings." The " middlings " are ground on rolls and make the best or " patent flour," this being the object of the " gradual reduction system," of milling as distinguished from the old or burr-stone system. In the " gradual reduction system " of milling different grades of flour are being made during the process of separating the " middlings " or best portions of the berry, which, when ground, make " patent flour."]